# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6127 | **DATE** | 3/10/2003 |
| **CASE TITLE** | Arvin Parker, et al. vs. Pepsi-Cola General Bottlers, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Plaintiffs' motion for sanctions [3-2] is granted. Plaintiffs' motion for a default judgment [3-1] is denied. Intervenor's motion for attorneys' fees [12-1] is denied. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 1 1 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 14 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | 03 MAR 10 PM 4:07 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARVIN PARKER and ROBERT GENA, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 02 C 6127 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| PEPSI-COLA GENERAL BOTTLERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

"There is nothing more central to what it means to be a client in the American system of justice than to know that, having hired a lawyer, the client need not worry about being taken advantage of by lawyers, with special skills and training, who represent others." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-396 (1995). Plaintiffs claim that Defendant Pepsi-Cola General Bottlers, Inc. ("Pepsi") and their counsel, John Kuenstler, of the law firm Wildman, Harrold, Allen & Dixon, willfully violated this principle when Kuenstler subpoenaed and deposed Plaintiff Robert Gena in the absence of Gena's lawyer. Plaintiffs move for default judgment and sanctions against Pepsi and its lawyers. Although we agree with Plaintiffs that Kuenstler willfully violated Model Rule of Professional Conduct 4.2 and Local Rule 83.54.2, we believe that the sanction of default judgment and dismissal is not warranted and therefore modify Plaintiffs' requested sanctions as set forth below. Accordingly, we grant Plaintiffs' motion for sanctions, (R. 3-2), and deny their motion for a default judgment, (R. 3-1).

## RELEVANT FACTS

On August 27, 2002, Plaintiffs filed a federal employment discrimination suit in this Court and served the complaint on Defendant. On September 6, 2002, Pepsi's outside counsel in

this case and a related employment discrimination case (the "Lupo litigation"), attorney John Kuenstler of Wildman, Harrold, Allen & Dixon, issued a subpoena to depose Gena as a witness in the Lupo litigation. Kuenstler served Gena personally with the subpoena and never sent a copy of it to Gena's lawyers, even after learning that Gena had initiated his own lawsuit. On September 24, 2002, Gena appeared at Kuenstler's office for his deposition. Also present was an attorney for the plaintiff in the Lupo litigation. The parties dispute what was said prior to the deposition. Kuenstler maintains that Gena informed both counsel for Pepsi and Lupo's counsel that his lawyer would not be attending the deposition, and that it was both attorneys' impression that Gena had informed his counsel of the deposition but that she had chosen not to attend. (R. 15, Def.'s Resp., Ex. A, Kuenstler Aff. at ¶¶ 7-9.) Lupo's lawyer, on the other hand, averred in an affidavit that "at no time prior to Mr. Gena's deposition did Mr. Gena never [sic] state anything to the effect 'that no one from the office of O'Malley & Madden, P.C. would be attending' the deposition." (R. 12, Lisa Kane Opp., Ex. D, Canela Aff. at ¶ 13.) Lupo's lawyer also stated in his affidavit that "at no time prior to the commencement of his deposition did Mr. Gena make any reference to his own federal lawsuit against [sic] or to the fact that he had retained counsel to represent him in that lawsuit against [Pepsi]." (*Id.*) Regardless, despite the absence of Gena's attorney, Kuenstler began the deposition, during which the following exchanges occurred, each of which evidenced Kuenstler's knowledge that Gena was represented by counsel at the time of the deposition:

> Q: Can you tell me generally how it is that you prepared for your deposition today?
> A: Just here to tell the truth.
> Q: ... Did you speak with anyone or did you review any documents?
> A: No.
> Q: Basically just kind of came in here cold more or less?

2

| | |
|---|---|
| A: | Right. |
| Q: | Just ready to answer questions? |
| A: | Yes, sir. |
| Q: | Other than the current matter of Mr. Lupo's lawsuit against Pepsi, have you ever been involved in any other types of litigation? |
| A: | I am right now with Pepsi. |
| Q: | My understanding is that you currently have a pending lawsuit against Pepsi; is that correct? |
| A: | That's correct. |
| Q: | Could you just describe for me . . . what that lawsuit, your lawsuit against Pepsi is about? |
| A: | My lawsuit is about racial discrimination. |

(R. 3, Pls.' Mot., Ex. F, Gena Dep. at 15-16.) During the next twenty pages of the deposition, Kuenstler questioned Gena about his work at Pepsi, his medical leave, and his job duties. (*Id.* at 20-40.) Later in the deposition, Kuenstler asked Gena if he had an opportunity to review his lawsuit against Pepsi, and when Gena answered affirmatively, Kuenstler followed up by asking, "And you probably went over it with your counsel to make sure everything was true and correct in that, right?" Kuenstler then showed Gena the charge of discrimination that he filed against Pepsi and asked him questions about it. Lupo's attorney followed up with several questions of his own. Lupo's counsel clarified that: (1) Gena was represented by an attorney in his lawsuit against Pepsi; and (2) when Gena received Kuenstler's subpoena he did not inform his lawyer about the deposition. (*Id.* at 107-08.) At the very end of the deposition, Kuenstler stated on the record that "we just learned that you were represented – you are represented by counsel in another matter against Pepsi. It was at least my understanding . . . that you had informed her of this deposition today and that she had or someone in her office had chosen not to attend." (*Id.* at 122-23.) Gena affirmed that he had not told his lawyer about the deposition. Two days later, Kuenstler, on Pepsi's behalf, executed and returned to Gena's counsel the Waiver of Service of Summons in Plaintiffs' lawsuit.

3

## ANALYSIS

The anti-contact rule provides:

> During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

N.D. Ill. L.R. 83.54.2; *see also* Model Rules of Prof'l Conduct R. 4.2 (1999).[1] This rule is designed, at least in part, to "[protect] the represented person against overreaching by adverse counsel, safeguard the client-lawyer relationship from interference by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests." ABA Formal Op. 95-396 (1995); *In Re Air Crash Disaster Near Roselawn, Ind.*, 909 F. Supp. 1116, 1121 (N.D. Ill. 1995) (noting that the anti-contact rule is designed to prevent counsel from "exploiting uncounseled [parties] into making ill-considered statements or admissions") (internal citations and quotations omitted). Accordingly, "a lawyer may not avoid the need to secure consent of counsel by closing her eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in question" and once the client's representation is disclosed, lawyers are on notice that they must deal with the client's lawyer on all matters unless the represented person's lawyer provides otherwise. ABA Formal Op. 95-396 (1995). Nor may the represented party waive the anti-contact rule and consent to communications outside the presence of his lawyer. *Id.* Thus, it is irrelevant that the represented person initiates the discussion or is otherwise willing to communicate because the rule focuses on

---

[1] Although the language in our Local Rule and Model Rule 4.2 differs slightly, the anti-contact principle underlying the rules is the same, and therefore we refer to the two rules interchangeably and cite authority under both rules in this opinion.

4

the duties of attorneys, not the rights of parties. *Id.*; *see also United States v. Lopez*, 4 F.3d 1455, 1462-63 (9th Cir. 1993); *Monceret v. Bd. of Prof. Resp.*, 29 S.W.3d 455 (Tenn. 2000). Courts have expansively construed the parameters of the anti-contact rule, finding violations for even the most minimal contacts with the represented party. *See, e.g., Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 883 (7th Cir. 2001) (violation of Rule 4.2 occurred when plaintiff's lawyer contacted defendant directly about a time change for his deposition); *Lopez*, 4 F.3d at 1456-57 (lawyer violated Rule 4.2 by contacting represented co-defendant to discussing possibility of approaching government to negotiate joint plea agreement for both defendants).

The *Monceret* case is practically indistinguishable from the instant case. In *Monceret*, the Tennessee Supreme Court affirmed an attorney disciplinary action against a lawyer who deposed a witness outside her lawyer's presence. *Monceret*, 29 S.W.3d at 461. The court rejected Monceret's argument that the witness waived her right to have counsel present by agreeing to go forward with the deposition. *Id.* Having read Rule 4.2, Local Rule 83.54.2 and the salient authority on the anti-contact rule generally, we have no doubt that Kuenstler violated the rule when he deposed Gena on September 24.

Unfortunately, Defendant closes its eyes to this obvious violation, and instead claims that Kuenstler's conduct was protected by an exception to the anti-contact rule, which permits communications with a represented party that are "authorized by law." *See, e.g.*, L.R. 83.54.2. Kuenstler maintains that he did not violate the rule because he issued a subpoena pursuant to Federal Rule of Civil Procedure 45. But even if we were to accept (1) Kuenstler's claim that he was unaware of Gena's pending lawsuit against Pepsi (and thus Gena's representation by O'Malley & Madden) until *after* Kuenstler issued the deposition subpoena; or (2) that Rule 45

5

does in fact authorize *ex parte* communication with a represented party, Kuenstler's position still would be wholly untenable.

First, we do not believe that the "authorized-by-law" exception creates a safe haven that allows contact with a represented party via a subpoena pursuant to Federal Rule of Civil Procedure 45. Courts and commentators have clarified that the "authorized by law" exception applies to statutory schemes or judicial holdings that *expressly* permit such contact, such as in the case of a represented party's interaction with a governmental agency whom he is suing. *See* Ronald D. Rotunda, *ABA Lawyer's Deskbook on Prof. Resp.*, Chapter 32 (2002-2003 ed.) (Communications authorized by law include the "right of a party to a controversy with a government agency to speak with government officials about this matter" or "constitutionally permissible investigative activities of lawyers representing governmental entities . . . ."); *Lopez*, 4 F.3d at 1461 (holding that anti-contact rule requires a statutory scheme expressly permitting contact between an attorney and a represented party and noting that statutory authority party relied on was nothing more than general enabling statutes, which did not expressly or impliedly authorize contact with represented individuals); *Monceret*, 29 S.W.3d at 461 (rejecting counsel's contention that he was "authorized by law" to contact the witness without her lawyer because he issued a subpoena, noting that "[s]uch a conclusion would minimize the attorney's ethical obligation under the Rule and would create an exception that would threaten to swallow the Rule."). We wholeheartedly agree that Federal Rule of Civil Procedure 45 does not authorize an exception to the anti-contact rule in this context.

Even if we were to assume that issuing a subpoena under Rule 45 excepted a violation of Rule 4.2, either because it falls within the "authorized-by-law" exception or because counsel was

6

unaware of the representation at the time he issued it (which is what Kuenstler argues here), Kuenstler's conduct still would not be excused. Just because counsel may have issued a *subpoena* permissible under the anti-contact rule does not mean that counsel's later *deposition* of the witness pursuant to that subpoena is also protected, especially where, as here, counsel clearly became aware of the party's representation during the intervening period. These are two separate communications, the latter of which is not protected by the "authorized-by-law" exception even if the first one is. We know that Kuenstler was aware that Gena was represented by counsel by the time the deposition occurred because he admitted in his affidavit that he asked Gena prior to starting the deposition whether anyone from O'Malley & Madden would be attending. Because we now know that Gena was unable to waive the anti-contact rule, Kuenstler should have halted the deposition immediately and contacted O'Malley & Madden either to obtain consent to proceed without them or to reschedule the deposition when counsel was available. And it makes no difference that this deposition was taken pursuant to the Lupo litigation and not Gena's own. Many of Kuenstler's questions touched specifically on Gena's own lawsuit against Pepsi. Gena clearly was entitled to have his lawyer present when he was asked questions under oath that could later bind him as admissions. In short, we reject Kuenstler's weak defense and will not hesitate to impose sanctions for his prior and ongoing behavior.[2]

---

[2] What is perhaps most regrettable about this situation is that an attorney such as Kuenstler, who is a partner with ten years' experience at a well-respected law firm, not only engages in these kinds of discovery tactics, but also persists in refusing to take responsibility for his actions by offering flimsy, unsupported defenses in such a contumacious manner. This kind of behavior does a disservice not only to this Court and the parties to this lawsuit, but also undermines his law firm's reputation as well as the public's trust in the sanctity of our judicial system and its discovery process as a means of uncovering the facts underlying a dispute in a fair, even-handed manner.

7

Turning to the issue of sanctions, we have broad discretion to award Plaintiffs the relief they seek. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *In Re Air Crash Disaster Near Roselawn, Ind.*, 909 F. Supp. 1116, 1124 (N.D. Ill. 1995) (*citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990)). "It is well established that courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Blanchard v. Edgemark Finan. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997) (internal citations and quotations omitted). In deciding the appropriate sanctions, "it is appropriate to consider the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of the prejudice suffered or likely to be suffered by the parties in the future as a result of the violation." *In re Air Crash Disaster*, 909 F. Supp. at 1124. Additionally, "[i]n determining the proper sanction or remedy, the court must consider the client's right to be represented by the counsel of his choice, as well as, the opposing party's right to prepare and try its case without prejudice." *Faison v. Thornton*, 863 F. Supp. 1204, 1215 (D. Nev. 1993). Courts also consider the prejudice to the judicial system and the potential for punishment and deterrence when assessing sanctions. *Quela v. Payco-Gen. Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681, *8 (N.D. Ill. Mar. 26, 2000). We are not limited, however, by the sanctions suggested by the plaintiff. *Quela*, 2000 WL 656681, at *5.

Courts have employed a variety of sanctions to address a no-contact violation. For example, "[c]ourts have elected to exclude from use at trial the evidence and information obtained during an improper *ex parte* communication until the excluded evidence is later

8

obtained through properly conducted discovery . . . . Still other courts have elected to disqualify the party's counsel who improperly engaged in *ex parte* communications with the represented party." ABA Lawyer's Deskbook on Prof. Resp., § 32-2.3; *Blanchard*, 175 F.R.D. at 303. Dismissal or the entry of a default judgment against the offending party is also an option. *Weibrecht*, 241 F.3d at 883. But such a sanction "should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Id.* (internal citation and quotation omitted); *see also Quela*, 2000 WL 656681, at *8 (in ordering default judgment against party that coerced an employee to lie in her deposition about issues central to the case, court notes that sanctions must "be proportionate to the circumstances surrounding the failure to comply with discovery") (internal citation omitted).

In this case, Plaintiffs seek a default judgment against Defendant. Short of that, they seek: (1) an order barring the use of testimony elicited at Gena's deposition; (2) an order barring Defendant from taking any depositions in this matter; (3) reimbursement of Plaintiffs' counsel's fees accrued in presenting this motion[3]; and (4) monetary sanctions to deter Pepsi from engaging in such conduct in the future.

As an initial matter, we do not believe that entering a default judgment against Defendant is the appropriate sanction in this case. Plaintiffs primarily rely on our decision in *Quela* in support of their request, but we believe that *Quela* is distinguishable from the instant case. In that case, the defendant intentionally coerced fraudulent written statements and false deposition

---

[3] Counsel in the Lupo litigation intervened in this case in support of Plaintiffs' motion. Lupo's counsel also seeks reimbursement of legal expenses incurred in preparing its motion and opposition to Defendant's response. (R. 12-1.)

9

testimony from an employee. *Id.* at *5. We entered a default judgment, holding that the sanction of default was proportionate to the defendant's "blatant contempt for this Court," its "fundamental disregard for the judicial process," and its willful, bad-faith actions. *Id.* at *8. We also concluded that no lesser sanction would suffice to: (1) protect the legitimacy of our judicial system and specifically of the discovery process; (2) punish the defendant; (3) deter future offenders; and (4) ensure that the falsehoods interjected into the litigation would not infect any subsequent outcome of the case. *Id.* at *7-8.

Although Kuenstler's behavior in this case was unethical, it does not rise to the same level as the conduct in *Quela,* where the defendant coerced false testimony from its own witnesses. Nor do we believe that the plaintiffs or the judicial system are prejudiced to the same extent as in *Quela.* In that case the testimony of the defendant's central witness was founded on a pack of lies coerced through threats and inducements and thus the defendant's behavior "cast[ed] doubt on every single representation made" in that action. *Id.* at *7. In the instant case, we believe that any resulting prejudice can be mitigated through appropriate discovery limitations and other sanctions. That we today distinguish *Quela* and decline to enter a default judgment, however, should not be mistaken as a softening of our stance on the harms that result from these kind of ethical violations. We emphasize that the conduct in *Quela*, as well as Kuenstler's conduct in this case, if left unchecked, results in serious harm to our judicial system and therefore must not be tolerated. We believe, however, that the sanctions we now impose reflect the seriousness of the conduct before us:

First, **IT IS HEREBY ORDERED** that Defendant is barred from using Gena's September 24 deposition testimony or any evidence obtained therefrom in the present litigation.

Defendant and its counsel are ordered to destroy any copies of the deposition in any format, as well as any summaries or analyses of the deposition prepared by counsel or at its request. Defendant must certify to this Court that it has done so by March 31, 2003.

Second, **IT IS FURTHER ORDERED** that Defendant may depose Gena in the future subject to a three-hour time limitation. Counsel may not explore in any future discovery or raise any statute of limitations defense based on Gena's statements in the September 24 deposition regarding the timing of Pepsi's alleged discrimination and retaliation against him.

Third, although we considered disqualifying Defendant's outside counsel entirely, or Kuenstler individually, we are sensitive to a client's right to be represented by the counsel of his choice, and the attending need to be cautious in applying this sanction. *See Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983); *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan*, 155 F.R.D. 615, 618 (N.D. Ill. 1994). Accordingly we decline to disqualify counsel in this case. Nevertheless, we encourage Kuenstler to seek ethical and professional responsibility training outside his law firm at the earliest possible opportunity.

Finally, **IT IS ORDERED** that Plaintiffs' motion for reasonable attorneys' fees arising from the preparation of this motion is granted. If the parties cannot agree on the proper amount and fail to submit a proposed agreed order within seven days from the date of this Order, Plaintiffs' must submit a fees petition and detailed affidavit in support no later than fourteen days from the date of this Order. Defendants will have seven days to respond, and Plaintiffs' reply, if any, is due seven days thereafter. This Court will then enter an order relating to attorneys' fees. We deny Lupo's counsel's motion for attorneys' fees. (R. 12-1.)

## CONCLUSION

As we have emphasized before, the boundaries of ethical responsibilities must not be trampled by aggressive lawyering. This Court cannot condone discovery abuses and violations of our Rules of Professional Responsibility and Local Rules by turning a blind eye to practices that undermine the cases before us and the judicial system as a whole. Accordingly we will protect the integrity of our judicial system by imposing sanctions to punish prior misconduct and to deter future violations. Plaintiffs' motion for sanctions, (R. 3-2), is granted and their motion for a default judgment is denied, (R. 3-1). Also, as noted above, intervenor's motion for attorneys' fees is denied. (R. 12-1.)

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

Dated: March 10, 2003